IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| LEHMAN BROTHERS BANK, FSB, et al. | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) Case No. 1:05cv1398 |
| FRANK T. YODER MORTGAGE et al., | ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION**

This multiparty diversity action grows out of a residential real estate transaction. Plaintiff, Lehman Brothers Bank, FSB ("LBB"), a federally chartered savings bank, sues four defendants, alleging various state law clauses of action, including breach of contract and fraud. At issue on this threshold dismissal motion is whether diversity jurisdiction is proper pursuant to 28 U.S.C. § 1332, given that LBB is a federal savings bank chartered pursuant to the Homeowners' Loan Act, 12 U.S.C. § 1461 *et seq*. Defendants seek dismissal on the ground that LBB, as a federally chartered corporation, is a national citizen ineligible on the facts of this case to invoke diversity jurisdiction. LBB argues that diversity of citizenship exists by virtue of the Supreme Court's recent ruling in *Wachovia Bank v. Schmidt*. 126 S.Ct. 941 (2006).

For the reasons that follow, LBB, as a federally chartered savings bank with substantial operations, is ineligible in the circumstances of this case to invoke federal diversity jurisdiction; accordingly, defendants' motion to dismiss must be granted.

1

**I.**

The material jurisdictional facts are undisputed and may be succinctly stated.[1] LBB is a federally chartered savings bank with its principal place of business in New York. *See generally* 12 U.S.C. § 1461 (codifying Homeowners' Loan Act, under which LBB is chartered). It is a subsidiary of Aurora, L.L.C. ("Aurora"), a Delaware limited liability holding corporation whose only subsidiary is LBB. LBB maintains branch offices in eleven states,[2] and in 2003 alone, processed mortgage loan applications from approximately 40 states.

The loan in dispute here grew out of an earlier sale of real estate owned by Richard and Wendie Forde ("The Fordes"). On February 15, 2002, the Fordes, debtors in bankruptcy, contracted to sell their home to Allodean Allobaidy ("Allobaidy"). Defendant Frank T. Yoder Mortgage, Inc. ("Yoder"), a mortgage firm incorporated in North Carolina with its principal place of business in Utah, originated Allobaidy's mortgage loan. In connection with the mortgage loan origination, defendant appraisers Gary Schneider, a Maryland citizen, and Scott Begab, a Virginia citizen, performed independent appraisals of the property in March 2002.

Because the property at issue was part of a bankruptcy estate, the Fordes required the Bankruptcy Court's permission to consummate the sale. By Order dated March 14, 2002, the

---

[1]See *Velasco v. Government of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004) ("[W]hen a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."); Wright and Miller, FEDERAL PRACTICE AND PROCEDURE: Civil 3d § 1363 (same). In any event, the material facts here are undisputed.

[2]In addition to its executive offices in New York, LBB maintains branch offices in Delaware, New Jersey, California, Colorado, Idaho, Maryland, Nebraska, Oregon, Texas, Utah, and Washington.

Bankruptcy Court authorized sale of the property. *See In re Forde*, 01-12296-SSM (Bankr. E.D. Va. March 14, 2002) (Order). On June 28, 2002 the Fordes closed the sale of the property to Allobaidy. Defendant U.S. Titles, Inc., a Virginia corporation with its principal place of business in Virginia, conducted the closing. Also on June 28, LBB funded mortgage loan number 0011809357 in the amount of $3,896,750.00 for purchase of the property. As a condition of funding Allobaidy's mortgage, LBB required Yoder to enter into a Broker Agreement and Lender Guidelines. The Guidelines, *inter alia*, required Yoder to repurchase the Mortgage Loan and to indemnify LBB for any breach of representation or warranty concerning documents submitted in conjunction with Allobaidy's mortgage loan.

In time, Allobiady failed to make payments on the mortgage loan, and the loan went into default on or around September 1, 2003. On December 3, 2003, Aurora commenced foreclosure proceedings, and subsequently purchased the Property for $4,084,832.80 at a foreclosure sale held on June 3, 2004. Aurora then apparently resold the property, for which it received $2,785,824.80 on April 5, 2005. Aurora and LBB have asserted exclusively state law fraud and contract claims against defendants, seeking to recover damages allegedly caused by defendants' misrepresentations and breaches of the Broker Agreement, including falsification of mortgage loan documents and misappraisal of the property's value.

The parties' contentions adequately frame the jurisdictional question presented. LBB contends that pursuant to *Wachovia*, it is a citizen New York where its principal place of business is located and that its citizenship is diverse from that of any defendant.[3] Defendants argue to the contrary that *Wachovia* does not apply, and that pursuant to settled law LBB, as a

---

[3] The adequacy of the amount in controversy is not disputed.

federally chartered savings bank, is a citizen not only of New York, but also of every state.

## II.

The proper citizenship of federally chartered corporations has a long and checkered legal history, some of which is worth recounting here as it helps to illuminate the resolution of the question presented. In 1824, the Supreme Court held that federal incorporation is sufficient to confer federal question jurisdiction. *See Osborn v. Bank of United States*, 22 U.S. (9 Wheat.) (1824); *see also Pacific Railroad Removal Cases*, 115 U.S. 1, 5 (1885) (same). In 1916, the Supreme Court held that a corporation chartered pursuant to an act of Congress was not a citizen of any state, and therefore was ineligible to invoke federal diversity jurisdiction. *Bankers Trust v. Texas & Pacific Ry.*, 241 U.S. 295, 309-10 (1916).

These decisions led to a flood of cases in federal courts based on § 1331 federal question jurisdiction, a flood that was not stemmed until 1948, when Congress enacted 28 U.S.C. § 1349.[4] This statute restricts federal question jurisdiction based on a company's federal charter to those companies where more than one-half of the company's stock is owned by the federal government. Ten years later, Congress also acted to restrict diversity jurisdiction based on a company's citizenship by expanding that citizenship to include the state where a corporation's principal place of business is located, as well as the state of its incorporation.[5] Of central importance here is that when Congress amended the definition of corporate citizenship to include

---

[4]Congress enacted § 1349 "to stem the flood of litigation to which the federal courts were ... subjected as a result of the decision in Pacific Railroad Removal Cases. ..." *Murphy v. Colonial Federal Savings & Loan Assoc.*, 388 F.2d 609, 612 (2d Cir. 1967).

[5]As amended, § 1332 "deemed corporations to be a citizen of any State in which it has been incorporated and of the State where it has its principal place of business." *See* 28 U.S.C. § 1332(c)(1).

a corporation's principal place of business, it did not state specifically whether this definition applied to federally chartered corporations as well as to those incorporated under state laws.[6] While the Supreme Court has never addressed this issue, the lower courts have uniformly construed § 1332(c) to apply only to companies incorporated under state law and thus courts continue to adhere to the general rule that federally chartered companies are ineligible for diversity jurisdiction. *See, e.g.*, *Hancock Financial Corp. v. Federal Savings and Loan Ins. Corp.*, 492 F.2d 1325, 1329 (9th Cir. 1974).[7]

There are two exceptions to this general rule. First, Congress may rebut the presumption of national citizenship for federally chartered corporations by providing for citizenship in a particular state, or by incorporating the entity as a "body corporate" of a particular state. *See,*

---

[6]*See Burton v. U.S. Olympic Committee*, 574 F.Supp. 517, 519 (C.D. Cal. 1983) ("[T]here is no evidence that Congress ever considered the applicability of the 1958 amendment to federal corporations. Rather, Congress probably intended the 1958 amendment to affect the jurisdictional status of state-incorporated companies only, leaving the status of federal corporations to receive further elaboration by the federal courts.") (citing Moore's Federal Practice, ¶ 0.77[2.-4] at 717.50 (2d ed. 1964)) (internal quotations omitted).

[7]*See also Provident Nat'l Bank v. California Federal Sav. & Loan Ass'n*, 624 F.Supp 858, 861 (E.D. Pa. 1985) ("[T]he general rule ... is that the citizenship of a federal corporation created to operate in one or more states is national only. Such a corporation has no state citizenship for jurisdictional purposes unless Congress so enacts."); *Monsanto Co. v. Tennessee Valley Authority*, 448 F.Supp. 648, 650 (N.D. Al. 1978) ("A corporation created by an Act of Congress and whose activities ... are not to be confined to a single state, is not a citizen of any state, absent a specific statutory provision for its citizenship in a state."); *Auriemma Consulting Group, Inc. v. Universal Sav. Bank*, 367 F.Supp.2d 311, 313 (E.D.N.Y.,2005) ("The general rule with respect to such institutions is that the corporation is not considered to be a citizen of any particular state for the purpose of establishing diversity of citizenship."); *Iceland Seafood Corp. v. National Consumer Cooperative Bank*, 285 F.Supp.2d 719, 723 (E.D. Va.2003) (same); *see also* Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE 2d § 3627 (same).

*e.g.*, *Iceland Seafood*, 285 F.Supp.2d at 723.[8]  Second, and particularly pertinent here, a federally chartered corporation may be eligible for diversity jurisdiction where its activities are sufficiently localized so that it may be deemed a citizen of a single state.  This "localization" exception, first articulated by the Third Circuit in 1959, reflects a recognition that, notwithstanding their federal charter, certain federal corporations have only a limited geographical presence, and therefore should be afforded the same opportunity to invoke diversity jurisdiction as entities incorporated under state law.  *See Feuchtwanger v. Lake Hiawatha Credit Union*, 272 F.2d 453 (3d Cir. 1959).[9]  Courts applying this "localization" exception have looked to a number of factors to determine whether a federally chartered corporation qualifies for the exception, including (i) the corporation's principal place of business; (ii) the location of the branch offices; (iii) the volume of business transacted in different states; and (iv) "any other evidence that tends to show the local or national nature of the corporation's plans and operations."  *See Auriemma*, 367 F.Supp.2d at 313.[10]  No one factor is determinative and the exception is not limited to corporations that

---

[8]*See also Provident Nat'l Bank v. California Federal Sav. & Loan Ass'n*, 624 F.Supp 858, 861 (E.D. Pa. 1985) ("[T]he general rule ... is that the citizenship of a federal corporation created to operate in one or more states is national only.  Such a corporation has no state citizenship for jurisdictional purposes **unless Congress so enacts**.") (emphasis added); *Monsanto Co. v. Tennessee Valley Authority*, 448 F.Supp. 648, 650 (N.D. Al. 1978) ("A corporation created by an Act of Congress and whose activities ... are not to be confined to a single state, is not a citizen of any state, **absent a specific statutory provision for its citizenship in a state**.") (emphasis added).

[9]*See also Iceland Seafood*, 285 F.Supp.2d at 724 (recognizing localization exception); *Loyola Federal Savings Bank v. Fickling*, 58 F.3d 603, 606 (11th Cir. 1995) (same); *Crum v. Veterans of Foreign Wars*, 502 F.Supp. 1377, 1379 (D. Del. 1980) (same); *Little League Baseball, Inc. v. Welsh Pub. Group, Inc.*, 874 F.Supp. 648, 651 (M.D. Pa. 1995) (same); *Burton v. U.S. Olympic Committee*, 574 F.Supp. 517, 519 (C.D. Cal. 1983) (same).

[10]*See also Iceland Seafood*, 285 F.Supp.2d at 724 (applying same factors); *Loyola Federal Savings Bank v. Fickling*, 58 F.3d 603, 606 (11th Cir. 1995) (same).

conduct all of their activities in one state.  *See Iceland Seafood*, 285 F.Supp.2d at 724; *Loyola Federal*, 58 F.3d at 606.  There is no clear dividing line separating geographically diverse companies from "localized" ones, but in view of the parties' agreement that LBB's operations are national in scope,[11] it therefore follows that LBB is ineligible for the localization exception.  Accordingly, it is unnecessary to reach or decide the scope of the localization exception here.

Notwithstanding the emergence of these two limited, well-defined exceptions to the general rule that federally chartered corporations are ineligible for diversity jurisdiction, statutory and common law history over the past ninety years clearly evinces a general trend to limit federal jurisdiction over claims involving federally chartered corporations.  The initial question presented, then, is whether LBB, as a federally chartered corporation, qualifies for either of the two exceptions to the general rule that federally chartered corporations are ineligible to invoke federal diversity jurisdiction.

At the outset, it is important to distinguish between national banks and federally chartered corporations, as each is governed by different statutes.[12]  Put simply, federally chartered corporations are national citizens ineligible to invoke federal diversity jurisdiction, while national banks are deemed citizens of the state in which they are incorporated as well as the state where their principal place of business is located.  And, it is also important to note that, as a limited liability company, Aurora has the same citizenship as LBB.  *See, e.g.*, *General Technologies*

---

[11]*See supra* Part I (noting that LBB maintains branch offices in 11 states outside New York and solicits mortgage applications in approximately 40 states).

[12]*Cf.* 28 U.S.C. § 1348 (statute governing federal subject matter jurisdiction with respect to national banks) *with* 28 U.S.C. § 1349 (statute governing federal subject matter jurisdiction with respect to federally chartered corporations).

*Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 120 (4th Cir. 2004) (holding that limited liability company is assigned the citizenship of its members). Accordingly, federal subject matter jurisdiction rises or falls on LBB's citizenship. As the party seeking jurisdiction, LBB has the burden to show that federal subject matter jurisdiction is proper. *Spencer v. Kemna*, 523 U.S. 1, 11 (1998).

In this case, the parties agree that LBB is ineligible to invoke either exception to the general rule that federally chartered banks cannot invoke diversity jurisdiction: Congress has not passed legislation chartering LBB in any state, and the nationwide scope of LBB's business activities precludes application of the localization exception. Indeed, courts have deemed federally chartered banks with a much lesser national presence than LBB ineligible for the localization exception. *Cf. Iceland Seafood*, 285 F.Supp.2d at 724 (holding localization exception inapplicable to federally chartered bank that conducted business in five states). Yet this does not end the analysis, as LBB maintains that the recently-decided Supreme Court opinion in *Wachovia Bank v. Schmidt* marked a sea change in this area of the law. *See* 126 S.Ct. 941 (2006).

*Wachovia* involved a suit by a national bank to compel arbitration of state claims alleging fraudulent inducement. Specifically, the question presented was the meaning of "located" in § 1348, the statute governing the citizenship of national banks for diversity jurisdiction purposes. The Supreme Court resolved the question by issuing the unexceptional ruling that national banks are, for diversity jurisdiction purposes, "located" in the state in which they are incorporated and in which their principal place of business is located. This ruling was unexceptional because it dealt only with national banks, not with federally chartered companies. *Feuchtwanger*'s

"localization" exception was not mentioned in the Supreme Court's opinion; there was no need to do so, as Wachovia was not federally chartered.

While LBB concedes that *Wachovia* dealt only with national banks, it argues that the decision is appropriately extended to the federally chartered savings bank regime given the similarities between national banks and federal savings banks.[13] This argument fails for several reasons.

First, the Supreme Court carefully cabined its holding in *Wachovia* to national banks, repeatedly referring to the text of § 1348. *See generally Wachovia*, 126 S.Ct. 941. Indeed, this opinion did not mention federally chartered savings banks. Second, permitting federal savings banks to avail themselves of diversity jurisdiction paradoxically would lead to the anomalous result of giving these entities greater access to federal courts than their state counterparts. This is so because federally chartered corporations, unlike their state-incorporated counterparts, have no state of incorporation, and therefore could more easily meet the complete diversity requirement. Accordingly, extending federal diversity jurisdiction to federally chartered savings banks would not, contrary to plaintiffs' argument, place federal savings banks "on the same footing" as their

---

[13] There were originally several historical distinctions between national banks and federal savings banks. National banks were corporations established by Congress "to aid or promote governmental purposes and to provide a uniform and reliable national currency." 9 C.J.S. Banks and Banking § 483. Because national banks functioned primarily as commercial banks, they historically engaged in borrowing and lending money. Accordingly, although national banks were organized by private persons and operated for private gain, they nonetheless were originally viewed as quasi-public institutions or as instrumentalities of the national government. *Id.* By contrast, savings banks—whether chartered under federal or state law—had purely private purposes. Primary among these purposes was the safeguarding of funds deposited by their customers. *Id.* at § 600. Unlike commercial banks, savings banks historically did not specialize in borrowing and lending services. *Id.* Over time, however, these distinctions have largely disappeared.

state counterparts. *See Wachovia*, 126 S.Ct at 947 (*quoting Leather Manufacturers' Bank v. Cooper*, 120 U.S. 778, 780 (1887).[14] Moreover, extending *Wachovia* in this manner would run counter to Congress' trend to narrow, not enlarge, federal diversity jurisdiction with respect to federally chartered corporations. *See, e.g.*, *Burton*, 574 F.Supp. at 520 (suggesting that permitting federally chartered corporations to invoke diversity jurisdiction would contravene Congress' intent to limit diversity jurisdiction). Finally, and perhaps most importantly, it is exceedingly unlikely that the Supreme Court would effect such a dramatic change in the law—overruling its prior opinion in *Bankers Trust*, as well as ninety years of lower court jurisprudence—*sub silencio*. For these reasons, *Wachovia* does not alter the general rule (or the exceptions thereto) that federally chartered corporations are ineligible to invoke diversity jurisdiction.

Because LBB has not carried its burden to show that diversity jurisdiction is proper, the case must be dismissed. An appropriate Order will issue.

Alexandria, Virginia
February 13, 2006

_____/s/_____
T. S. Ellis, III
United States District Judge

---

[14]*See also Burton v. U.S. Olympic Committee*, 574 F.Supp. 517, 520 (C.D. Cal. 1983) ("In 1948[, §] 1349 was passed by Congress providing that a federal question is involved only in suits where over one-half of the stock of the federal corporation is owned by the United States. This Congressional attempt to limit federal court jurisdiction would be nullified by defendant's interpretation of diversity jurisdiction which would give federal jurisdiction to almost all suits involving federally chartered corporations.